IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STEPHANIE GREENE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-20-1122-JD |
| ) | |
| OKLAHOMA STATE DEPARTMENT ) | |
| OF HEALTH, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Before the Court is a Motion to Dismiss ("Motion") filed by Defendant Oklahoma State Department of Health ("OSDH") [Doc. No. 7]. Plaintiff Stephanie Greene ("Ms. Greene") has filed a response [Doc. No. 8], and OSDH filed a reply [Doc. No. 9]. For the reasons stated below, the Court grants in part and denies in part the Motion.

**I.    BACKGROUND**

Ms. Greene, a former OSDH employee, filed this employment discrimination action following the termination of her employment as a human resource specialist. Ms. Greene asserts claims for race discrimination, retaliation, and a racially hostile work environment under Title VII, and interference with and retaliation of her Family and Medical Leave Act ("FMLA") rights. OSDH seeks dismissal of Ms. Greene's claims for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

According to her allegations, Ms. Greene is an African American female who was employed by OSDH for three years before her termination on October 23, 2019. Compl.

¶¶ 4, 12 [Doc. No. 1]. In 2018, Ms. Greene became a foster parent, which Ms. Greene asserts made her eligible for FMLA leave, which she received in 2018 and 2019. *Id.* ¶¶ 13–15.

On November 16, 2018, Ms. Greene received a new supervisor, Rosangela Miguel (a Caucasian female). *Id.* ¶ 16. About two weeks later, Ms. Miguel issued a written reprimand to Ms. Greene, which Ms. Greene asserts contained a "litany of false accusations regarding Ms. Greene's conduct." *Id.* ¶ 18. As a result, Ms. Greene filed a grievance asserting that the written reprimand was discriminatory and reflected harassment, bullying, and disparate treatment. *Id.* ¶ 19. Although an OSDH special investigator informed Ms. Greene by letter that her grievance would be investigated, Ms. Greene asserts that OSDH never investigated her discrimination claims. *Id.* ¶ 24.

Ms. Greene also describes how her FMLA leave was handled by Ms. Miguel and alleges that Ms. Miguel rescinded 80 hours of shared leave donations Ms. Greene had received from donors. *Id.* ¶¶ 25–35, 37–41. Ms. Greene asserts that the unlawful removal of her shared leave resulted in her receiving 19.50 hours of leave without pay and affected her future retirement calculations. *Id.* ¶¶ 34–35.

Upon exhausting her FMLA leave, Ms. Greene returned to work on July 23, 2019. *Id.* ¶ 41. That same day, Ms. Miguel suspended Ms. Greene for ten days without pay and cited her for misconduct and neglect of job duties. *Id.* Ms. Greene describes in the Complaint additional adverse treatment by Ms. Miguel, including a requirement that Ms. Greene report by email when she arrived at work each day, left for lunch, returned from lunch, and left at the end of the day. *Id.* ¶ 44. Ms. Greene asserts that this policy applied

only to her, and that no other employee was subjected to such adverse treatment. *Id*. ¶¶ 44–45. Additionally, Ms. Greene alleges that Ms. Miguel gave some of Ms. Greene's job duties to another employee after she complained of disparate treatment. *Id*. ¶¶ 46–52. OSDH terminated Ms. Greene's employment on October 23, 2019. *Id*. ¶¶ 4, 53.

## II.   STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a complaint does not need detailed factual assertions, a pleading that offers only "labels and conclusions" or "pleads facts that are merely consistent with a defendant's liability" will not suffice. *Id*. (internal quotation marks and citations omitted). The burden is on the plaintiff to plead factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Under this standard, all well-pled factual allegations are accepted as true. *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010). Conclusory statements, however, are not entitled to the assumption of truth and courts are free to disregard them. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

### III. ANALYSIS

#### A. Ms. Greene fails to state a claim for a racially hostile work environment under Title VII (Count I).

OSDH argues that, accepting Ms. Greene's allegations as true, they are insufficient to state a claim for a racially hostile work environment under Title VII. The Tenth Circuit has explained that the words "hostile work environment" are simply a legal conclusion and that the Court's focus at the motion to dismiss stage is the "alleged facts supporting those words." *Moya v. Schollenbarger*, 465 F.3d 444, 457 (10th Cir. 2006) (internal quotations and citation omitted). The elements of a hostile work environment claim are: (1) the plaintiff is a member of a protected group; (2) the plaintiff was subjected to unwelcome harassment; (3) the harassment was based on race; and (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of the plaintiff's employment, and created an abusive working environment. *See Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1222 (10th Cir. 2015) (citation omitted).

The Court finds that Ms. Greene's allegations are insufficient to state a claim upon which relief can be granted under *Twombly* and its progeny. Although Ms. Greene has alleged that she was a member of a protected group and received unwelcome harassment by Ms. Miguel, Ms. Greene has not alleged any harassment based on race. To establish a race-based hostile work environment claim, the "'harassment must be racial or stem from racial animus.'" *Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 960 (10th Cir. 2012) (quoting *Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1139 (10th Cir. 2008)). While Ms. Greene is not required to prove racial animus in her Complaint, she still must

set forth "enough facts" suggesting it is "plausible" that Ms. Miguel's acts were racially motivated. *Twombly*, 550 U.S. at 556. Absent from Ms. Greene's Complaint are any facts that Ms. Miguel's requirement that Ms. Greene check in by email arose from racial animus, or that Ms. Miguel's decision to have another employee take over some of Ms. Greene's job duties was motivated by race. *See, e.g.*, *Brown v. LaFerry's LP Gas Co.*, 708 F. App'x 518, 522 (10th Cir. 2017) (unpublished)[1] (noting that when retaliation is the sole motivation for conduct, "this retaliatory conduct does not support [a] claim of racially motivated harassment").

    Nor is the alleged harassment sufficiently severe or pervasive from an objective standpoint. *See Turnbull v. Topeka State Hosp.*, 255 F.3d 1238, 1243 (10th Cir. 2001) (finding harassing conduct must be "both objectively and subjectively abusive"). Although Ms. Greene may have found the email check-ins to be tedious, there is no allegation that the check-ins interfered with her ability to do her work or take advantage of any job-related privileges. Further, there is no allegation that Ms. Greene was singled out by Ms. Miguel because of her race. In fact, the only references to race in the Complaint come in the form of Ms. Greene's conclusory allegations that she is African American, Ms. Miguel is "white," and Ms. Miguel "relied on racially discriminatory criteria to terminate Ms. Greene." Compl. ¶¶ 12, 16, 23. These "conclusory statements[] do not suffice." *Iqbal*, 556 U.S. at 678. Ms. Greene does not identify the racially discriminatory criteria, nor does she allege that she was victim to "a steady barrage of

---

[1] All unpublished opinions are cited pursuant to FED. R. APP. P. 32.1(a) and 10th CIR. R. 32.1.

opprobrious racial comments," or any racial comments for that matter. *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005) (internal quotation marks and citation omitted) (a plaintiff must show more than a few isolated incidents of racial hostility or sporadic racial slurs; instead, "there must be a steady barrage of opprobrious racial comments"). Accordingly, her hostile work environment claim cannot withstand OSDH's motion to dismiss.

> **B. Ms. Greene fails to state a claim for race discrimination under Title VII (Count II).**

Although Ms. Greene "is not required to set forth a prima facie case for each element" of her race discrimination claim under Rule 12(b)(6), she must still "set forth [a] plausible claim[]." *Khalik*, 671 F.3d at 1193; *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002) (explaining that there is no "heightened pleading standard for employment discrimination suits"). "[G]eneral assertions of discrimination and retaliation, without any details whatsoever of events . . . , are insufficient to survive a motion to dismiss." *Khalik*, 671 F.3d at 1193. "While '[s]pecific facts are not necessary,' *some* facts are." *Id.* (emphasis added) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).

"'The critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred under circumstances which give rise to an inference of unlawful discrimination.'" *Plotke v. White*, 405 F.3d 1092, 1100 (10th Cir. 2005) (quoting *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1227 (10th Cir. 2000)). In determining whether a plaintiff has stated a plausible claim for

race discrimination, the Court must consider the elements of the claim, which are: (1) the plaintiff is a member of a protected class; (2) the plaintiff suffered an adverse employment action; (3) the plaintiff was qualified for the position at issue; and (4) the plaintiff was terminated under circumstances that give rise to an inference of unlawful discrimination. *Plotke*, 405 F.3d at 1099–1100; *Salguero v. City of Clovis*, 366 F.3d 1168, 1175 (10th Cir. 2004).

In this case, several of Ms. Greene's allegations "are not entitled to the assumption of truth because they are entirely conclusory," *Khalik*, 671 F.3d at 1193, including her allegations that: (1) Ms. Miguel issued her a written reprimand listing "a long litany of false accusations regarding Ms. Greene's conduct"; (2) Ms. Miguel "relied on racially discriminatory criteria to terminate Ms. Greene"; (3) the email check-in policy imposed by Ms. Miguel was discriminatory on its face; and (4) OSDH "engaged in intentional and unlawful employment practices in violation of Title VII," including terminating Ms. Greene's employment. Compl. ¶¶ 18, 23, 45, 63.

Striking those conclusory allegations leaves the Court with the following facts, which the Court views as true: (1) Ms. Greene is an African American female; (2) she met the objective qualifications of her position; (3) Ms. Greene filed a grievance about discrimination; and (4) OSDH terminated her employment. These facts do not allege discrimination based on race, for they are, at most "general assertions of discrimination." *Khalik*, 671 F.3d at 1193. There are no allegations in the Complaint, other than sheer speculation, linking Ms. Greene's discharge to a racially discriminatory motive. *Id*. at 1194; *see also Plotke*, 405 F.3d at 1100 (explaining that there must "be a logical

7

connection between each element of the prima facie case and the inference of discrimination"). Therefore, this claim fails as well.

### C. Ms. Greene fails to state a claim for FMLA interference (Count III), but she does state a claim for FMLA retaliation (Count IV).

The FMLA guarantees up to 12 weeks of unpaid leave during any 12-month period for eligible employees because of the placement of a foster child with an employee, and reinstatement to the former or an equivalent position upon return from leave. *See* 29 U.S.C. §§ 2612(a)(1)(B), 2614(a). An employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." *Id.* § 2615(a)(1). To state an interference claim, the plaintiff must plead facts to show: "(1) that she was entitled to FMLA leave; (2) that some adverse action by the employer interfered with her right to take FMLA leave; and (3) that the employer's action was related to the exercise or attempted exercise of her FMLA rights." *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007) (cleaned up). Under this theory, interference of FMLA rights "is a violation regardless of the employer's intent, and the *McDonnell Douglas*[2] burden-shifting analysis does *not* apply to interference claims." *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1180 (10th Cir. 2006) (citations omitted).

---

[2]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973) (holding that once a plaintiff carries the initial burden of establishing a prima facie case, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection").

8

To state a claim for retaliation under the FMLA, a plaintiff must plead facts to demonstrate: "(1) she engaged in protected activity; (2) [the defendant] took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action." *Campbell*, 478 F.3d at 1287 (internal quotation marks and citation omitted). Unlike interference claims, the Tenth Circuit requires the third element under a retaliation theory to include a showing of bad intent or a "retaliatory motive" on the employer's part; thus, interpreting retaliation claims using the burden-shifting analysis in *McDonnell Douglas*. *Id*.

The two claims also differ regarding the timing of the adverse action. *Id*. For an interference claim, "the employee must show that she was prevented from taking the full 12 weeks' of leave guaranteed by the FMLA, denied reinstatement following leave, or denied initial permission to take leave." *Id*. A retaliation claim, on the other hand, may be pursued when the employee successfully exhausted FMLA leave and returned to her prior position, but was adversely affected by employment actions post-dating her return. *Id*. at 1287–88.

Although Ms. Greene asserts FMLA interference by OSDH, Ms. Greene factually pleads that her FMLA leave was approved "starting January 30, 2019, for up to 480 hours within a 12-month period." Compl. ¶ 32. Later in the Complaint, Ms. Greene affirmatively pleads again that she "was approved for Family Medical leave starting January 30, 2019." *Id*. ¶ 37. Additionally, Ms. Greene alleges that she received FMLA leave in 2018 and 2019. *Id*. ¶ 15.

According to Ms. Greene's allegations, Ms. Miguel notified her on July 16, 2019, that "her approved FMLA leave for the placement of her foster children was exhausted on July 9, 2019," and that Ms. Greene needed to return to work within seven days or face disciplinary action. *Id.* ¶ 39. Ms. Greene responded by email six days later indicating she would return to work the next day. *Id.* ¶ 40. A plain and fair reading of Ms. Greene's Complaint is that Ms. Greene was approved for the appropriate number of statutory hours of leave, that she took leave in 2018 and 2019, and that she was reinstated to her prior position upon her return from leave. Under these alleged facts, she was neither denied leave nor denied reinstatement to give rise to a claim for interference. *Campbell*, 478 F.3d at 1287.

Ms. Greene argues in her response that OSDH interfered with her right to FMLA leave when Ms. Miguel ordered her to return donated FMLA shared leave. Pl.'s Resp. at 9 [Doc. No. 8]. As a result, Ms. Greene allegedly incurred leave without pay when she took off work to care for a sick foster baby who had a 102.4-degree fever and was taken to the emergency room. *Id.* The Court cannot discern from the allegations in the Complaint whether Ms. Greene sought leave in this instance for an FMLA-qualifying reason. *See, e.g.*, *Jones v. Denver Pub. Schools*, 427 F.3d 1315, 1323 (10th Cir. 2005) (observing that the first element of a prima facie FMLA interference claim is missing where the plaintiff cannot show that he was entitled to FMLA leave).

Ms. Greene pled in the Complaint that she had agreed to serve as a foster parent to a 12-year-old child and an 11-year-old child, and that she received FMLA leave in 2018 and 2019 because of the placement of the children with her for foster care. Compl. ¶¶ 13–

10

15; *see also* 29 U.S.C. § 2612(a)(1)(B). The 19.50 hours of leave taken to care for the sick foster baby does not appear to relate to placement of the two older children in Ms. Greene's care. It is unclear from the Complaint whether Ms. Greene in February 2019 was concurrently exercising FMLA leave because of the placement of the two older children in foster care. Nevertheless, to be entitled to FMLA leave under the circumstances, Ms. Greene must state facts to indicate the sick baby suffered from "a serious health condition," defined under the Act as "an illness, injury, impairment, or physical or mental condition that involves" either "inpatient care" or "continuing treatment by a health care provider." 29 U.S.C. § 2611(11); *see also Jones*, 427 F.3d at 1323. The Complaint is devoid of such facts. The Complaint, therefore, does not state a claim for interference upon which relief can be granted.

     Ms. Greene's FMLA retaliation claim, however, presents a closer question. Ms. Greene alleges that she engaged in a protected activity by taking FMLA leave, for which she was approved. Compl. ¶¶ 15, 31–32, 37. On July 16, 2019, Ms. Miguel notified Ms. Greene by email that her approved FMLA leave for the placement of her foster children expired on July 9, 2019, and that "Ms. Greene either needed to resign or return to work before the end of seven days," or Ms. Greene would be subject to disciplinary action, including possible termination. *Id*. ¶ 39. Ms. Greene asserts that she returned to work on the seventh day, July 23, 2019, only to be suspended for ten days without pay for allegedly neglecting her job duties. *Id*. ¶ 41. Ms. Greene argues that her return from FMLA leave, and her unpaid suspension, are sufficiently close in time to support a finding of causation. The Tenth Circuit has held that a "retaliatory motive may be

11

inferred when an adverse action closely follows protected activity." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999). The closer the adverse employment action is to the protected activity, the more likely there is a causal connection. *Id.* Here, the unpaid suspension was initiated the same day Ms. Greene returned from FMLA leave. The Court concludes that Ms. Greene has adequately stated a claim for FMLA retaliation.

### D. Ms. Greene fails to state a retaliation claim under Title VII (Count V).

The elements of a prima facie case for retaliation under Title VII are: (1) the plaintiff engaged in protected opposition to discrimination; (2) a reasonable employee would have found the alleged retaliatory action to be materially adverse; and (3) there is a causal connection between the protected activity and the alleged retaliatory action. *Khalik*, 671 F.3d at 1193. Ms. Greene asserts in her response that her October 4, 2019, email to Ms. Miguel represents protected opposition to discrimination. Pl.'s Resp. at 12. OSDH contends that the Complaint offers no factual averments about the content of the October 4 email, other than an unspecified request for a "one on one" meeting, and that Ms. Greene fails to allege facts sufficient to satisfy the first element of a Title VII retaliation claim. Def.'s Reply at 6 [Doc. No. 9]; Compl. ¶ 52.

The Court agrees that the October 4 email, as loosely described in the Complaint, does not communicate to Ms. Miguel that Ms. Greene believed she had engaged in employment discrimination or had violated Title VII. *See, e.g.*, *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 276 (2009) (finding that an employee's communication to her employer asserting that the employer has engaged in a form of employment discrimination, "virtually always constitutes the employee's

12

opposition to the activity") (internal quotation marks and citation omitted)). Thus, Ms. Greene fails to sufficiently allege that she engaged in protected opposition as required to state a claim for retaliation under Title VII.

**IV.     CONCLUSION**

Based on the foregoing, the Court ORDERS as follows:

1.      The Court GRANTS in part and DENIES in part the Motion to Dismiss filed by Defendant Oklahoma State Department of Health [Doc. No. 7]. The Court DISMISSES WITHOUT PREJUDICE Plaintiff Stephanie Greene's claims for Title VII hostile work environment, discrimination, and retaliation, and FMLA interference (Counts I, II, III, and V). Only Plaintiff's claim for FMLA retaliation (Count IV) survives the Motion.

2.      Under Federal Rule of Civil Procedure 12(a)(4), the Court ORDERS Defendant Oklahoma State Department of Health to file and serve its responsive pleading on Plaintiff's FMLA retaliation claim within **14 days** after the date of this Order.

3.      The Court ORDERS the parties to confer through counsel and submit a Joint Status Report and Discovery Plan in compliance with Federal Rule of Civil Procedure 26 and Local Civil Rule 16.1, on the required form for this district, within **30 days** after the date of this Order. Should the parties anticipate that a protective order on confidentiality will be necessary for discovery, the parties must confer and file, within **30 days** after the date of this Order, a motion for protective order and proposed order. Upon the filing of the Joint Status Report and Discovery Plan, the Court will set the parties for a status and scheduling conference to discuss and enter a scheduling order.

IT IS SO ORDERED this 3rd day of September 2021.

_____
JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE