IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STEPHANIE GREENE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-20-01122-JD |
| ) | |
| OKLAHOMA STATE DEPARTMENT ) | |
| OF HEALTH, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Before the Court is a Partial Motion to Dismiss Plaintiff's Amended Complaint [Doc. No. 16] filed by Defendant Oklahoma State Department of Health ("OSDH") ("Motion") [Doc. No. 18]. Plaintiff Stephanie Greene ("Ms. Greene") has filed a response [Doc. No. 31], and OSDH filed a reply [Doc. No. 32]. For the reasons stated below, the Court grants in part and denies in part the Motion.

## I. BACKGROUND

### A. Procedural Background

Ms. Greene, a former OSDH employee, filed this employment discrimination action following the termination of her employment as a human resource specialist. She initially asserted claims for race discrimination, retaliation, and a racially hostile work environment under Title VII, and interference with and retaliation of her Family and Medical Leave Act ("FMLA") rights. Compl. [Doc. No. 1]. OSDH moved to dismiss Ms. Greene's claims for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). [Doc. No. 7]. The Court granted in part and

denied in part OSDH's motion, dismissing without prejudice Ms. Greene's claims for Title VII hostile work environment, discrimination, and retaliation, and FMLA interference (Counts I, II, III, and V). [Doc. No. 10]. Only Ms. Greene's claim for FMLA retaliation (Count IV) survived the motion. *Id*.

Within the time set by the Court, Ms. Greene filed an Amended Complaint [Doc. No. 16], asserting Title VII race discrimination and retaliation claims (Counts I and IV) and FMLA interference and retaliation claims (Counts II and III). OSDH now moves to dismiss Ms. Greene's Title VII retaliation claim and FMLA interference claim (Counts II and IV) under Rule 12(b)(6). [Doc. No. 18]. Specifically, OSDH asserts that Ms. Greene has failed to satisfy the threshold element of her FMLA interference claim, i.e., that she was entitled to FMLA leave because her sick foster baby with a high fever did not suffer from a "serious health condition," as defined under the FMLA. OSDH asserts that Ms. Greene's Title VII retaliation claim fails because she has not alleged facts to show a sufficient causal connection between the protected activity and the alleged retaliatory action.

In response, Ms. Greene asserts that caring for a sick baby "for more than three consecutive calendar days, including visiting the emergency room, supports a serious medical condition worthy of FMLA protection." Pl.'s Resp. at 6 [Doc. No. 31]. She also asserts that she has established a sufficient causal connection between her December 2018 grievance (protected activity) and OSDH's alleged subsequent retaliatory actions.

Pursuant to the Court's Scheduling Order [Doc. No. 14 at 3], the parties submitted a Joint Stipulation of Facts [Doc. No. 15] on November 8, 2021. The Court references

2

certain stipulated facts in this Order and accepts them as true for present purposes. Additionally, the Court construes the allegations in the Amended Complaint in the light most favorable to Ms. Greene and takes all well-pleaded allegations as true. *See Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (explaining the court must "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff").

**B.     Factual Background**

Ms. Greene is an African American female who was employed by OSDH as a Human Resource Specialist II for three years before her termination on October 25, 2019. *See* Stipulation ("Stip.") ¶¶ 1, 3. On July 2, 2018, Ms. Greene became a foster parent to N.R., a 12-year-old child. Am. Compl. ¶ 13. On September 6, 2018, Ms. Greene agreed to serve as a foster parent to N.R.'s 11-year-old sister, A.R. *Id.* ¶ 14. Serving as a foster parent qualifies an employee for FMLA leave. *Id.* ¶ 15; Stip. ¶ 4. Ms. Greene alleges that she received FMLA leave in 2018 and 2019. Am. Compl. ¶ 15.

In October 2018, Ms. Greene received a new supervisor, Rosangela Miguel (a Caucasian female). *Id.* ¶ 16; *see also* Stip. ¶ 6. On December 3, 2018, Ms. Miguel issued a written reprimand to Ms. Greene. Am. Compl. ¶ 18. As a result, Ms. Greene filed an internal grievance on December 26, 2018, requesting the "corrective discipline be removed from her personnel file." Stip. ¶ 7; *see also* Am. Compl. ¶ 19. Although an OSDH special investigator informed Ms. Greene by letter that her grievance would be investigated, Ms. Greene asserts that OSDH never investigated her discrimination claims. Am. Compl. ¶ 24.

3

Ms. Greene's FMLA interference claim centers on the 19.50 hours of leave without pay she sustained in February 2019 when she took off work to care for her sick foster baby who had a high fever and had to be taken to the emergency room. *Id*. ¶¶ 34, 63. Ms. Greene alleges that she was entitled to FMLA leave for her sick foster baby's serious health condition, and that Ms. Miguel interfered with her FMLA rights by denying her FMLA leave and rescinding 80 hours of shared leave donations Ms. Greene had received from donors.[1] *Id*. ¶¶ 25–34, 63.

On July 22, 2019, Ms. Greene sent Ms. Miguel an email stating that she would return to work the next day. *Id.* ¶ 39; Stip. ¶ 8. When Ms. Greene returned to work on July 23, 2019, she was given a notice of a ten-day suspension, and on August 1, 2019, she was suspended without pay and cited for misconduct and neglect of job duties. Stip. ¶¶ 9–10; Am. Compl. ¶ 40.

Ms. Greene describes in the Amended Complaint additional adverse treatment by Ms. Miguel, including a requirement that Ms. Greene report by email when she arrived at

---

[1] Ms. Greene affirmatively pleads that she "was approved for Family Medical leave starting January 30, 2019." Am. Compl. ¶ 36. Additionally, Ms. Greene alleges that she received FMLA leave in 2018 and 2019. *Id*. ¶ 15. There is no allegation that she was prevented from taking the full 12 weeks of leave guaranteed by the FMLA for placement of the two older foster children. Ms. Greene cites no authority to support an allegation that Ms. Miguel's rescission of shared leave donations was an adverse action that interfered with Ms. Greene's FMLA right to unpaid sick leave. In other words, OSDH was not required to provide paid sick leave in a situation where they would not normally provide it. *See* 29 U.S.C. §§ 2615(a)(1), 2612(d)(2)(B); *see also Hartman v. Harrison Sch. Dist. Two*, No. CIV-17-01133-PAB-SKC, 2019 WL 142121, at *3 (D. Colo. Jan. 9, 2019) (finding that the plaintiff had cited "no authority to support the argument that defendants' failure to transmit a request for optional donations of paid sick days to other employees on plaintiff's behalf is an adverse action that interferes with plaintiff's FMLA right to unpaid sick leave").

work each day, left for lunch, returned from lunch, and left at the end of the day. Am. Compl. ¶ 43. Ms. Greene asserts that Ms. Miguel admitted, under oath, at the Oklahoma Merit Protection Commission hearing that this policy applied only to Ms. Greene, and that no other employee was subjected to such a requirement. *Id.* Additionally, Ms. Greene alleges that Ms. Miguel gave some of Ms. Greene's job duties to another employee after she complained of disparate treatment. *Id.* ¶¶ 44–52. Ms. Greene emailed Ms. Miguel on October 4, 2019, complaining that some of her duties had been given to Brandy Reames. *Id.* ¶ 49; Stip. ¶ 11. OSDH terminated Ms. Greene's employment on October 25, 2019. Stip. ¶ 12.

## II.   STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a complaint does not need detailed factual assertions, a pleading that offers only "labels and conclusions" or "pleads facts that are merely consistent with a defendant's liability" will not suffice. *Id.* (citations omitted). The burden is on the plaintiff to plead factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Under this standard, all well-pled factual allegations are accepted as true. *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010).

Conclusory statements, however, are not entitled to the assumption of truth and courts are free to disregard them. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

### III. ANALYSIS

#### A. Ms. Greene fails to state a claim for FMLA interference (Count II) because she fails to allege facts to show that she was entitled to FMLA leave to care for her sick foster baby.

The FMLA provides that eligible employees are entitled to take up to 12 weeks of leave "[i]n order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). "Son or daughter" includes a "foster child." *Id.* § 2611(12). The parties agree that Ms. Greene was an "eligible employee" under the Act because Ms. Greene had worked for OSDH for at least 12 months and 1,250 hours before her foster parent FMLA leave events in 2018 and 2019. *Id.* § 2611(2)(A); Stip. ¶ 5.

An employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1). "To make out a prima facie claim for FMLA interference, a plaintiff must establish (1) that [s]he is entitled to FMLA leave, (2) that some adverse action by the employer interfered with [her] right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of [her] FMLA rights." *Jones v. Denver Pub. Schs.*, 427 F.3d 1315, 1319 (10th Cir. 2005).

Ms. Greene's FMLA interference claim focuses on the 19.50 hours of leave without pay she sustained in February 2019 when she took off work to care for her sick foster baby who had a high fever and had to be taken to the emergency room. However,

6

Ms. Greene fails to set forth facts to show that she sought leave for an FMLA-qualifying reason. She has not stated facts to show that her sick baby suffered from a "serious health condition," defined as "an illness, injury, impairment, or physical or mental condition that involves inpatient care in a hospital, hospice, or residential medical care facility; or continuing treatment by a health care provider[2]." 29 U.S.C. § 2611(11) (cleaned up); *Jones*, 427 F.3d at 1323 (observing that the first element of a prima facie FMLA interference claim is absent where the plaintiff cannot show that he was entitled to FMLA leave).

The Tenth Circuit and the Department of Labor have provided guidance on what constitutes a serious health condition under the FMLA. *See Jones*, 427 F.3d at 1319–1323; 29 C.F.R. §§ 825.113–825.115. Under regulations promulgated by the Department of Labor, "continuing treatment" includes:

> A period of incapacity[3] of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves . . . [t]reatment two or more times, within 30 days of the first day of incapacity . . . or . . . [t]reatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider.

29 C.F.R. § 825.115(a)(1), (2); *see also Jones*, 427 F.3d at 1319.

---

[2] "Health care provider" means "(A) a doctor of medicine or osteopathy who is authorized to practice medicine or surgery (as appropriate) by the State in which the doctor practices; or (B) any other person determined by the Secretary to be capable of providing health care services." 29 U.S.C. § 2611(6).

[3] "The term incapacity means inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom." 29 C.F.R. § 825.113(b).

"Treatment" includes "examinations to determine if a serious health condition exists and evaluations of the condition," while a "regimen of continuing treatment" includes "a course of prescription medication (e.g., an antibiotic) . . . ." 29 C.F.R. § 825.113(c). "A regimen of continuing treatment that includes the taking of over-the-counter medications such as aspirin, antihistamines, . . . or bed-rest, drinking fluids . . . is not, by itself, sufficient to constitute a regimen of continuing treatment for purposes of FMLA leave." *Id*. Additionally, "unless complications arise, the common cold, the flu, ear aches, [and] upset stomach" "do not meet the definition of a serious health condition and do not qualify for FMLA leave." *Id*. § 825.113(d).

Ms. Greene alleges that her foster baby was taken to the emergency room with a high fever on February 11, 2019. Am. Compl. ¶ 34. On February 12, the child reportedly still had a high fever and was unable to attend daycare. *Id*. On February 13, Ms. Greene alleges that the baby was feeling better but still had a fever. *Id*.

There is no allegation that the child's visit to the emergency room resulted in an overnight stay at the hospital. Also absent is any allegation that the child received subsequent treatment or that the child's illness caused a period of incapacity of more than three consecutive, full calendar days. 29 C.F.R. §§ 825.114–825.115; *see also Jones*, 427 F.3d at 1321 ("[T]o qualify for FMLA protection, the health condition must be sufficiently serious that it entails an absence of more than three consecutive calendar days during which the employee obtained treatment by a health care provider at least two times (or one time followed by a regimen of continuing treatment).").

"FMLA protection is not intended for minor ailments and injuries," but rather is reserved for employees and their family members "who have a serious health condition." *Jones*, 427 F.3d at 1322. The Court finds that a temporary fever does not meet the requirements.

Ms. Greene's reliance on *Banda v. Baptist Village Retirement Communities of Oklahoma, Inc.*, No. 09-cv-191-GKF-PJC, 2009 WL 5216927 (N.D. Okla. Dec. 30, 2009) is misplaced, and Ms. Greene understates the facts of that case. The court in *Banda* considered whether the plaintiff's amended complaint was sufficient to state a claim for FMLA retaliation or FMLA interference. 2009 WL 5216927, at *1. The court determined that the plaintiff's allegations in the amended complaint were sufficient to state claims for FMLA retaliation and interference. *Id*. at *2. A review of Banda's First Amended Complaint shows that the plaintiff allegedly ran a fever for nine days and after being seen in the emergency room, the plaintiff was diagnosed with pneumonia and prescribed a course of antibiotic treatment. *See Banda v. Baptist Vill. Ret. Cmtys. of Okla., Inc.*, No. 09-cv-191-GKF-PJC, N.D. Okla., Pl.'s First Am. Compl. [Doc. No. 14] ¶¶ 11–17. She was also advised during her emergency room visit not to return to work until she was fever-free for 24 hours. *Id*. ¶ 17.

Thus, Ms. Banda's pneumonia resulted in her absence from work of more than three consecutive calendar days, and she obtained treatment by a health care provider followed by a regimen of continuing treatment. Such allegations are lacking here. Accordingly, Ms. Greene's FMLA interference claim cannot withstand OSDH's motion to dismiss.

**B.     Ms. Greene states a claim for Title VII retaliation (Count IV) because she has alleged facts showing a plausible pattern of retaliatory conduct after her December 2018 grievance culminating in her termination, therefore, establishing an inference of a retaliatory motive and a sufficient causal connection at this stage of the proceedings.**

The elements of a prima facie case for retaliation under Title VII are: (1) the plaintiff engaged in protected opposition to discrimination; (2) a reasonable employee would have found the alleged retaliatory action to be materially adverse; and (3) there is a causal connection between the protected activity and the alleged retaliatory action. *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012) (citation omitted). OSDH asserts that Ms. Greene's Title VII retaliation claim fails because she has not alleged facts to show a sufficient causal connection between her December 2018 grievance and the subsequent alleged retaliatory actions by OSDH, including Ms. Greene's suspension without pay, her additional task-reporting requirements, and her termination. Ms. Greene, however, asserts that she does not rely on close temporal proximity alone and that she has alleged sufficient facts to establish a causal connection.

The Tenth Circuit has held that a "retaliatory motive may be inferred when an adverse action closely follows protected activity." *Piercy v. Maketa*, 480 F.3d 1192, 1198 (10th Cir. 2007) (citation omitted). Nonetheless, unless the alleged retaliatory action "is *very closely* connected in time to the protected activity, the plaintiff must rely on additional evidence beyond temporal proximity to establish causation." *Id*. (citation omitted). Thus, "the passage of time does not necessarily bar a plaintiff's retaliation claim if *additional* evidence establishes the retaliatory motive." *Id*. at 1198–99. The Tenth Circuit has cautioned that "'the phrase 'closely followed' must not be read too

restrictively where the pattern of retaliatory conduct begins soon after the [protected action] and only culminates later in actual discharge.'" *Id*. at 1199 (quoting *Marx v. Schnuck Mkts., Inc*., 76 F.3d 324, 329 (10th Cir. 1996)).

Ms. Greene filed her grievance on December 26, 2018, and was terminated ten months later on October 25, 2019. In the Tenth Circuit, ten months is too large of a gap to establish a causal connection. *See Piercy*, 480 F.3d at 1198 (noting that the Tenth Circuit has found a proximity of three months insufficient to support "a presumption of causation"); *see also Proctor v. United Parcel Serv*., 502 F.3d 1200, 1208 (10th Cir. 2007) (noting that four months was too large of a time gap to establish a causal connection). Thus, Ms. Greene must present additional evidence to establish the necessary causal connection. *Piercy*, 480 F.3d at 1198–99.

Ms. Greene asserts that the ten-month gap between her December 2018 grievance (protected activity) and her termination, paired with OSDH's "repeated lies, falsehoods, and fabrications communicated to [Ms. Greene] not only establish pretext but, more importantly, establish a causal connection." Pl.'s Resp. at 10. Relying on cases decided at the summary judgment stage, OSDH asserts that Ms. Greene's Amended Complaint fails to establish an inference of a retaliatory motive.

Viewing the allegations in the Amended Complaint in a light most favorable to Ms. Greene as this Court is bound to do at this stage of the proceedings, the Court concludes that Ms. Greene has presented sufficient allegations to establish an inference of a retaliatory motive and a causal connection between her December 2018 grievance and her termination on October 25, 2019. More specifically, Ms. Greene alleges facts

11

demonstrating a possible "pattern of retaliatory conduct" that began soon after her filed grievance and culminated in her termination. *Marx*, 76 F.3d at 329.

Two days after Ms. Greene filed her grievance asserting that the written reprimand she received "was racially discriminatory and in violation of OSDH's policies prohibiting race discrimination," Ms. Miguel sent an email to the entire staff which highlighted the HR employees who had made processing errors in their work. Am. Compl. ¶¶ 20–21. Ms. Greene was among the HR employees listed as making mistakes. *Id*. Additionally, Ms. Miguel rescinded Ms. Greene's shared leave donations shortly after Ms. Greene was notified that OSDH would investigate her grievance. *Id*. ¶¶ 24–29. Ms. Greene alleges, however, that OSDH never investigated her claims of discrimination and falsely reported that Ms. Greene had opted not to file a discrimination complaint. *Id*. ¶¶ 24, 35.

On July 16, 2019, Ms. Miguel notified Ms. Greene by email that her approved FMLA leave for the placement of her foster children expired on July 9, 2019, and that "Ms. Greene either needed to resign or return to work before the end of seven days," or Ms. Greene would be subject to disciplinary action, including possible termination. *Id*. ¶ 38. Ms. Greene asserts that she returned to work on the seventh day, July 23, 2019, and received a notice of a ten-day suspension, and on August 1, 2019, she was suspended without pay and cited for misconduct and neglect of job duties. *Id*. ¶ 40; Stip. ¶¶ 9–10.

In addition, Ms. Greene was required to report by email her daily comings and goings, a requirement that Ms. Miguel admitted under oath applied only to Ms. Greene and no other employee. Am. Compl. ¶ 43. Ms. Greene also alleges that Ms. Miguel gave some of Ms. Greene's job duties to another employee after she complained of disparate

12

treatment. *Id.* ¶¶ 45–52. Ms. Greene emailed Ms. Miguel on October 4, 2019, complaining that some of her duties had been given to Brandy Reames. Stip. ¶ 11. That same month, OSDH terminated Ms. Greene's employment. *Id.* ¶ 12.

From these allegations, one could infer that this pattern of conduct following Ms. Greene's grievance on December 26, 2018 was retaliatory and a precursor to her ultimate termination on October 25, 2019, thus providing the necessary plausible causal connection at this stage. *See, e.g., Marx*, 76 F.3d at 329; *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001). Accordingly, the Court concludes that Ms. Greene has adequately stated a retaliation claim under Title VII.

## IV.     <u>CONCLUSION</u>

Based on the foregoing, the Court ORDERS as follows:

1.     The Court GRANTS in part and DENIES in part the Partial Motion to Dismiss Plaintiff's Amended Complaint [Doc. No. 18] filed by Defendant Oklahoma State Department of Health. The Court DISMISSES WITHOUT PREJUDICE Plaintiff Stephanie Greene's FMLA interference claim (Count II). Ms. Greene's claims for Title VII race discrimination and retaliation (Counts I and IV) and FMLA retaliation (Count III) survive.

2.     Under Federal Rule of Civil Procedure 12(a)(4), the Court ORDERS Defendant Oklahoma State Department of Health to file and serve its responsive pleading within **14 days** after the date of this Order.

IT IS SO ORDERED this 22nd day of February 2022.

_____
JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE